# CIRCUIT COURT OF FAIRFAX COUNTY

Robert Mehlman,
General Partner, et al.

v.

American Property
Services, Inc., et al.

May 5, 1999

Case No. (Law) 168503

BY JUDGE KATHLEEN H. MACKAY

This case involves an alleged breach of a settlement agreement executed between the parties on September 17, 1997. The case was tried on December 7, 1998, and the Court reconvened the parties on December 16, 1998, to announce its decision. Having heard additional argument on December 16, 1998, the Court entered an order in favor of the Plaintiffs and set up a briefing schedule on Defendants' oral motion to reconsider. The Court suspended its December 16, 1998, order on December 17, 1998, and counsel for the parties complied with the briefing schedule. Defendants filed a written Motion to Reconsider on December 30, 1998, and a Brief in Support of the Motion on January 5, 1999. Plaintiffs filed a Reply and Opposition on January 11, 1999, and the Court took the entire matter under advisement.

## The Case

Plaintiffs in this case are Robert Mehlman, General Partner of MT Associates; Bruce Talus, General Partner of MT Associates; and MT Associates ("MT"). Defendants are American Property Services, Inc. ("APS"); Purcellville Associates, L.L.C. ("Purcellville"); and Robert and Marilyn DeLuca.

Plaintiffs filed their Amended Motion for Judgment on April 21, 1998, and ask that they be awarded a judgment against the Defendants. They allege

in Count I that the parties entered into an agreement whereby the Defendants agreed to make certain payments to the Plaintiffs in order to settle disputes over investments made by the Plaintiffs with the Defendants. Plaintiffs allege that the failure of Defendants to make these payments constituted a breach of the agreement and the basis for their claim of $455,079.48, plus interest dating from the breach, January 21, 1998.

Count II of the Amended Motion for Judgment alleges a separate breach of an alleged guarantee made by the Defendants to the Plaintiffs when the Plaintiffs proceeded against Alva Roy Heron, Jr., a business partner of the DeLucas, subsequent to September 17, 1997. The Plaintiffs had initiated litigation against Heron as a means of collecting the debt owed them by the DeLucas since the DeLucas were also debtors of Heron. In Count II, Plaintiffs allege that in order to induce MT's forbearance against Heron and Heron's forbearance against the DeLucas, the DeLucas promised to pay amounts remaining under the 1997 Settlement Agreement. Plaintiffs chose not to pursue Count II, and a nonsuit as to that Count was entered by Judge Bach on November 23, 1998.

The December 7, 1998, hearing was brief, and the Plaintiffs introduced the following exhibits: the Settlement Agreement executed by the parties on September 17, 1997; a copy of a check showing a payment on behalf of the Defendants in the amount of $352,083.33 dated September 17, 1997; a copy of a check showing a payment on behalf of the Defendants in the amount of $78,373.75 dated November 6, 1997; a copy of a check showing a payment on behalf of the Defendants in the amount of $90,000.00 dated March 20, 1998; and a three-page document entitled "Revised Heron Judgments as of December 7, 1998," including "MT Associates Breakdown of Payments." No court reporter was present.

Defendants did not object to the admission of these first four exhibits but strenuously objected to the admission of the fifth (actually identified as Plaintiffs' No. 6). This last exhibit was admitted through the testimony of Plaintiff Bruce Talus and constituted parol evidence. Defendants argued that ambiguities in the Settlement Agreement were patent rather than latent and that the Court could not consider parol evidence to explain a patent ambiguity.

## Decision

Reduced to its simplest terms, the issue to be decided is whether the Settlement Agreement relied upon by the Plaintiffs is a fully-integrated contract that stands on its own and which can be enforced to allow the Court to enter judgment against the Defendants. The Defendants contend that

because of patent ambiguities in the contract it is at best a forbearance agreement that once breached allows Plaintiffs freedom to proceed against Heron and nothing more. For reasons that are set out below, the Court agrees with the Defendants and grants their Motion to Reconsider its prior order. The Court will not enter judgment against the Defendants and dismisses the action.

*Discussion*

A. *The Settlement Agreement ("SA")*

In its introductory language, the SA identifies three pieces of litigation: *Robert Mehlman et al. v. Purcellville Associates, L.L.C.*, Law No. 19288 (Loudoun County Circuit Court); *Robert Mehlman et al. v. American Property Services et al.*, Law No. 19277 (Fairfax County Circuit Court); and *Robert Mehlman et al. v. Purcellville Associates, L.L.C.*, Chancery No. 17883 (Loudoun County Circuit Court). The SA purports to settle "all of the above pending actions in the Circuit Court of Loudoun County, Virginia."[1]

Section 1 of the SA states that the Defendants and the third party Heron agree to payment terms. The terms are set out in seven separate paragraphs abbreviated as follows:

(a) $ 352,083.33 — payable on or before 9/17/97;
(b) $ 77,083.33 — payable on or before 10/31/97;
(c) $ 40,000.00 — payable on or before 12/31/97;
(d) $ 40,000.00 — payable on or before 1/30/98;
(e) $ 40,000.00 — payable on or before 2/27/98;
(f) $ 40,000.00 — payable on or before 3/31/98;
(g) Balance due from Heron to MT, Mehlman, and Talus payable on 4/30/98.

The first six specified payments are defined in detail, the first two payments in great detail. The first two payments were calculated using a principal figure and an interest figure running from specified dates. The first payment included attorney's fees. The first payment is to be credited to Purcellville on a Promissory Note dated 10/10/96. The second payment is to be credited to the amount of APS in full satisfaction of Law No. 19288 and

---

[1] This sentence itself contains a latent ambiguity. Are the parties settling "all of the above pending actions" or only those arising in Loudoun County?

Chancery No. 17883, the Loudoun County actions. Payments three through six are to be applied to the account of third party Heron.

The last and final payment is not a specific amount and in contrast to the description of the prior six payments is devoid of any language explaining how the balance is to be calculated. Paragraph G states in its entirety: "On April 30, 1998, the balance due from Heron to MT, Mehlman, and Talus shall be paid in full."

In Section 2 of the SA, the Plaintiffs agree that upon receipt of the first payment of $352,083.33, they shall dismiss their pending claims in Law No. 19288 and Chancery No. 17883. Upon receipt of the first payment, Plaintiffs agree to deliver a certificate of release to APS which could be recorded releasing a Memorandum of Lis Pendens filed August 7, 1997, in Loudoun County. In Section 4 of the SA, the Plaintiffs promise to release Purcellville from any further liability relating to a 10/10/96 promissory note in exchange for a Consent Judgment from APS in the amount of $77,083.33. Upon payment of the $77,083.33, the Plaintiffs agree to "void" the Consent Judgment.

In sum, it would appear that upon the payments by the Defendants of the $352,083.33 and the $77,083.33, the parties will have settled and disposed of the following: both Loudoun County actions, the Lis Pendens of 8/7/97, and the Promissory Note of 10/10/96. Although there appears to be some confusion in the interplay of the obligations contained in Sections 1, 2, and 4, this summary is what the SA sets out as the net result if the first two payments are made.[2]

Section 3 of the SA references for the first time two confessed Judgment Notes, Law Nos. 161872 and 162003 (Fairfax County Circuit Court) obtained by the Plaintiffs against Heron. Part B of Section 3 states:

> The parties hereby agree that during the faithful performance of this agreement, MT, Mehlman, and Talus shall forbear against any additional attempts to collect any sums from Heron pursuant to the Heron judgments, or pursuant to any other security instrument with regard to the underlying the Confessed Judgment Notes from Heron. This forbearance is without prejudice to the rights of MT, Mehlman,

---

[2] Plaintiffs argue that they never would have agreed to dismiss all of the matters referred to unless the Defendants were bound to pay all seven payments including "balance due from Heron," but the provisions of Sections 2 and 4 specifically refer to the first two payments and no other.

and Talus to pursue collection of the Heron judgments in the event of a default of the term of the agreement.

Section 5 of the SA defines default as "the failure to pay the APS Consent Judgment on or before October 31, 1997, or the failure to pay each of the $40,000.00 payments due on December 31, 1997, January 30, 1998, February 27, 1998, or March 31, 1998." This "default" provision does not specify whose failure to pay constitutes default, nor does it state that the failure to pay the "balance due" on April 30, 1998, constitutes a default.

A reading of the SA leaves one with several questions:

1. Why was Law 19277 (Fairfax County) mentioned in the preamble but never referred to again;

2. Why is the failure to pay the "balance due from Heron" not listed as a "default;"

3. Why is there no definition of the remedies upon default available to the Plaintiffs against APS or Purcellville;

4. What is the "balance due from Heron to MT, Mehlman, and Talus."

## B. *What Happened*

Plaintiff Mehlman testified on December 7, 1998, that the Defendants made the first two payments delineated in the SA and in addition made another payment of $90,000.00. In return, the Plaintiffs did dismiss the Loudoun County actions, released the Lis Pendens, and marked the Consent Judgment void as contemplated by the SA. Plaintiff Talus testified that the amount still owing to the Plaintiffs under the SA was $417,870.28 as of December 7, 1998. This figure included amounts due under payments six and seven of the SA. The bulk of this figure was "the balance due from Heron to MT, Mehlman, and Talus."

Without Plaintiff Talus' testimony, the judgment figure would have been impossible to ascertain from the four corners of the SA. Plaintiffs' Exhibit No. 6 was an extremely detailed calculation of monies owed to the Plaintiffs. The Exhibit provides what the SA lacks.

## C. *Legal Arguments*

Defendants maintain that the last payment delineated in the SA is a patent ambiguity. In defining that term, the Plaintiffs rely on *Galloway Corp. v. S. B. Ballard Const. Co.*, 250 Va. 493 (1995), in which the Supreme Court defined a patent ambiguity as one which is self-evident from the writing itself.

An ambiguity which is patent contrasts with one that is latent, that is, not self-evident from the writing. In the former, the parties could be expected to have supplied the missing information themselves. The omission is obvious on its face. In the latter, the ambiguity is not obvious. In the former, the parties bear the responsibility for the omission. In the latter, the intention of the parties is doubtful and parol evidence is admissible. *Id.* at 503.

In *Galloway*, the Supreme Court cited *Zehler v. Bruce*, 208 Va. 796 (1968), a case which presents a fact situation which is similar to the instant case. In *Zehler*, the trial court allowed parol evidence to amplify an instrument that guaranteed payment to a furniture manufacturer. The instrument itself guaranteed a payment of $2,000.00 to the manufacturer. Parol evidence led the trial court to conclude that the actual guarantee was $18,316.15. Despite the trial court's determination that the $2,000.00 figure as it was placed in the instrument made no sense, the trial court was powerless to supply a figure the parties could have inserted themselves. The trial court could not force the guarantee to make sense.

Defendants cite as a hypothetical example a contract to sell a "blue car" when the seller has two blue cars. Parol evidence would be admissible to show which "blue car" was governed by the contract. In that hypothetical, an ambiguity not apparent on its face could be explained.

In the instant case, the confusion is not latent, that is, the balance due is not subject to two or more meanings. The balance due has one meaning. The parties, however, have not agreed upon that meaning. The missing number is patently obvious from a reading of the contract.

The obviousness of the omission is all the more apparent when one considers the detailed description as to the origin of the other payments specified in the SA and the detailed nature of the calculations contained in Plaintiff's Exhibit No. 6. Although the Heron judgments are referred to in the SA, they are never described.[3] It is with a kind of "gulp" that one hears that the "balance due" so cursorily referred to approximates $400,000.00. Although the Court made an effort to construe the whole agreement as supporting Plaintiffs' requested judgment, the effort fails not only because the omission is too large a hole to fill in but also because it is further deepened by the other ambiguities referred to above. For instance, not only is the balance due unknown but the language as to default is deficient and remedies against

---

[3] At one point in the hearing, Plaintiff made a passing reference to the Court's ability to take judicial notice of judgments recorded in the courthouse. Not so. Plaintiff would have to produce properly certified records. See Va. Code § 8.01-389 and *Bernau v. Nealon,* 219 Va. 1039 (1979).

APS and Purcellville are nowhere to be found. In contrast, the remedy against Heron is specifically set out in Section 3 of the SA.

Plaintiffs argue that Defendants' admissions in response to the Motion for Judgment and the history of payments made are evidence that the SA was a contract under which a judgment could be granted. However, these actions and admissions could just as easily have been made in furtherance of an agreement to forebear.

## Conclusion

The SA does not state what is the final amount due. This omission is a patent ambiguity. The SA does not state what happens in the event of a default except with reference to Heron. The first ambiguity casts doubt on the ability of the SA to stand on its own terms. The second ambiguity leads the Court to conclude that the SA was at best an agreement to forebear against third party Heron. Because the payments were not made as set out in the Agreement, the Plaintiffs are free to renew their litigation against Heron.